[No. 28578-5-I.   Division One.   July 26, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. NELLIE F. MOORE, *Appellant.*

*Mary Jane Ferguson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Drew Zavatsky, Deputy,* for respondent.

FORREST, J. — Nellie Moore appeals the judgment convicting her of one count of possession of cocaine with intent to deliver and the sentence of 21 months claiming: (1) the conviction should be reversed because findings and conclusions on the suppression issue were not entered until after she had filed her opening brief, (2) the trial court erred in admitting a taped conversation between Moore and a police officer, and (3) the trial court erred in determining her conviction carried a seriousness level of 8. Finding no error, we affirm.

Prior to March 24, 1990, the date of the incident involved here, Moore had worked as a confidential informant for the Seattle Police Department (SPD). Sometime after May 1988, the supervisor of SPD's narcotics detectives instructed the detectives to stop working with Moore because he deemed her not sufficiently reliable.

At approximately 10 p.m. on March 24, 1990, SPD conducted a reverse sting operation during which Detective Eddie Rivera agreed to sell cocaine to Moore and codefendant John Courage. Earlier that evening, Moore had called Detective Rivera and said she and another person had $5,000 and wanted to purchase cocaine. Rivera also talked to Courage, who set up the buy for that evening.

Moore testified that she wanted to set Courage up to be busted and, when he asked her where he could get cocaine, she paged Detective Rivera, knowing he was a police officer. Detective Rivera testified that Moore never informed him of her status as a confidential informant for SPD and that she was not working as a confidential informant on March 24, 1990.[1] Detective Rivera had met Moore twice before and on both occa-

[1] Sergeant Navarrete, who was also involved in the reverse sting, testified that Moore was not working as a confidential informant at the time of the sting.

sions, Moore indicated that she wanted to buy cocaine from him.

Prior to meeting Moore and Courage, Detective Rivera completed a wire order and his captain approved it. Detective Rivera was wired and Sergeant Nicholson monitored and recorded the conversation between Moore and Detective Rivera which took place inside an automobile with no one but Moore and Detective Rivera present.

After Detective Rivera placed the cocaine in Moore's purse, he gave the arrest signal and Moore and Courage were arrested. Moore was charged with one count of possession with intent to deliver. She objected to the admission of the tape of her conversation with Detective Rivera on the ground, *inter alia*, that the State failed to obtain judicial review of the authorization of the wire order. At the suppression hearing on March 5, 1991, the court ruled that the tape was admissible and that the jury would be permitted to read a transcript of the conversation as well as listen to the tape, but that the transcript would not be admitted into evidence. The jury returned a verdict of guilty and Moore was sentenced to 21 months, within the standard range assuming a seriousness level of 8. Moore filed her opening appellate brief on August 31, 1992. Findings and conclusions on the suppression hearing were not entered until December 23, 1992.

## STATEMENT OF THE ISSUES

1. Should Moore's conviction be dismissed because findings and conclusions on the suppression issue were not entered until after she had filed her opening appellate brief?

2. Did the trial court err in admitting the tape recording and transcript of Moore's conversation with Rivera?

3. Did the trial court err in calculating Moore's sentence using a seriousness level of 8?

## LATE FINDINGS

Moore contends her conviction must be reversed because the State filed findings and conclusions on December 23, 1992, almost 4 months after Moore's appellate brief was filed. We disagree.

██ ██ Delayed entry of findings and conclusions after a suppression hearing has been held not to be reversible error where the delay did not prejudice the defendant or prevent effective appellate review.[2] The same result has occurred in juvenile proceedings involving the entry of findings and conclusions pursuant to JuCR 7.11. In *State v. Harris*,[3] the State did not submit findings and conclusions until the defendant noted their absence in his appellate brief. The court declined to reverse the conviction on this ground and stated:

> Here, the written findings have been entered, although late. They track the court's oral findings on the issues material to our resolution of this appeal. Accordingly, there is no appearance of unfairness in accepting them after Mr. Harris set forth his assignments of error in his opening brief. The late entry has not delayed the appeal and, thus, has not prejudiced Mr. Harris' liberty interest.

*State v. Harris*, 66 Wn. App. 636, 641, 833 P.2d 402 (1992).

Here, the trial court's oral opinion on the admissibility of the tape and transcript is comprehensive. The court addressed each argument Moore raised and clearly explained its rationale on each point. The findings and conclusions that were eventually entered track the court's oral opinion and are a fair representation of the court's decision.

██ Moreover, Moore did not file a reply brief in which she could have identified the ways in which she was prejudiced by the delayed entry. In *State v. Charlie*,[4] the court noted that the failure to file a supplemental brief after findings and conclusions are entered precludes a defendant from establishing prejudice. *Charlie* is factually distinguishable from this case; nevertheless, its rationale as to late filing applies, and Moore's failure to file a reply brief should weigh against a finding of prejudice from the delayed entry of findings and conclusions. Although the delay is not to be condoned, it does not, under

---

[2] *See, e.g., State v. Hoffman*, 116 Wn.2d 51, 95, 804 P.2d 577 (1991); *State v. Koepke*, 47 Wn. App. 897, 902, 738 P.2d 295 (1987).

[3] 66 Wn. App. 636, 833 P.2d 402 (1992).

[4] 62 Wn. App. 729, 733, 815 P.2d 819 (1991).

these circumstances, necessitate a reversal of Moore's conviction.

## TAPE RECORDING

Moore contends the tape recording and transcript should have been excluded because the State failed to show that it complied with the statutory requirement of judicial review of the police officer's authorization of the recording. We disagree.

RCW 9.73.230(8) controls. It provides in relevant part:

> In any subsequent judicial proceeding, evidence obtained through the interception or recording of a conversation or communication pursuant to this section shall be admissible only if:
> (a) The court finds that the requirements of subsection (1) of this section were met and the evidence is used in prosecuting an offense listed in subsection (1)(b) of this section[.]

Subsection (1) sets forth the circumstances under which a conversation may be recorded with the consent of only one party thereto.[5]

Here, the requirements of subsection (1) were met and the tape recording was properly admitted. First, at least one party to the conversation, Detective Rivera, consented to the recording, thus satisfying RCW 9.73.230(1)(a). Second, Rivera had probable cause to believe the conversation with Moore would involve "the unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell" cocaine. RCW 9.73.230(1)(b). Prior to the meeting between Rivera and Moore, Moore had called Rivera and said she and another person had

---

[5]"(1) As part of a bona fide criminal investigation, the chief law enforcement officer of a law enforcement agency or his or her designee above the rank of first line supervisor may authorize the interception, transmission, or recording of a conversation or communication by officers under the following circumstances:

"(a) At least one party to the conversation or communication has consented to the interception, transmission, or recording;

"(b) Probable cause exists to believe that the conversation or communication involves the unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, controlled substances as defined in chapter 69.50 RCW, or legend drugs as defined in chapter 69.41 RCW, or imitation controlled substances as defined in chapter 69.52 RCW; and

"(c) A written report has been completed as required by subsection (2) of this section." RCW 9.73.230(1).

$5,000 and wanted to buy cocaine. Moore agreed to purchase 4 ounces and she and Rivera agreed to meet in a parking lot on Aurora Avenue. From these facts, probable cause existed to believe that the conversation would involve the sale, possession, and/or delivery of cocaine.

Third, Rivera complied with RCW 9.73.230(1)(c), which requires the completion of a written report pursuant to subsection (2).[6] The report, State's exhibit 1, sets forth "[t]he circumstances that meet the requirements of subsection (1)". RCW 9.73.230(2)(a). That is, the report states that authorization was given by Captain Ferguson, who was above a first-line supervisor, that Rivera consented to the recording, and that probable cause existed as follows:

> That on 3-24-90 at approx 2000 hrs I received a call from a female known to me as Nellie Hardman who stated she had a guy who wanted to buy some cocaine. I have had a on-going investigation on Nellie Hardman where I have been posing as a large quantity cocaine dealer. On this date it was agreed that I would sell her and her friend four ounces of cocaine for four thousand dollars. We then agreed to meet in the back parking lot of the K-Mart located at N 130th & Aurora Ave. N. at 2200 hrs where the exchange of money and cocaine will take place.

Nellie Moore was also known as Nellie Hardman.

The report contains the names of the authorizing and consenting parties, the names of the officers authorized to intercept, transmit, and record the conversation, and the identity of the persons who may commit the offense, in compliance with RCW 9.73.230(2)(b), (c), and (d). Also, the report provides the details of the offense "and the expected date, location, and approximate time of the conversation". RCW 9.73.230(2)(e). Finally, the report states that there had been no attempt to obtain authorization pursuant to RCW 9.73-.090(2), in fulfillment of RCW 9.73.230(2)(f).

The trial court properly found that the requirements of subsection (1) were met.

---

[6]Subsection (2) requires the agency's chief officer or designee who authorizes the interception, transmission, or recording to prepare and sign a written report at the time of the authorization indicating certain items.

██ ██ Moore contends the tape recording was improperly admitted because, at the suppression hearing, the State failed to prove that it complied with subsections (6) and (7) which require the submission of the authorization to the court for judicial review. However, the plain language of subsection (8) requires only that the court find the requirements of subsection (1) were met, and does not require a finding that the requirements of either subsection (6) or (7) were met.

Moore admits that no Washington case has held that the State's failure to fulfill the requirements of subsections (6) and (7) makes the recording inadmissible but argues that, under the Court of Appeals' decision in *State v. Salinas*,[7] the failure to comply requires exclusion of the evidence. In *Salinas*, information obtained by a police officer during a drug bust was held inadmissible because the officer failed to obtain written authorization from a police officer or commander above the rank of first-line supervisor prior to recording a conversation with one of the participants in the drug buy. Authorization by the appropriate police officer is a requirement set forth in subsection (1). Thus, because this requirement was not met, the Court of Appeals excluded the evidence obtained through use of the wire pursuant to subsection (8). Contrary to Moore's argument, *Salinas* does not stand for the proposition that failure to comply with anything other than the requirements of subsection (1) requires exclusion of the testimony. Rather, *Salinas* represents adherence to the plain language of subsection (8)(a), which requires exclusion of the evidence if the court finds that the requirements of subsection (1) were not met.

Since the State complied with the requirements of RCW 9.73.230, Moore's only remaining argument is that the stat-

---

[7] 67 Wn. App. 232, 834 P.2d 673 (1992), *aff'd*, 121 Wn.2d 689, 853 P.2d 439 (1993). The Supreme Court affirmed the exclusion of the evidence because the officer's body wire was not authorized under either RCW 9.73.210 or RCW 9.73-.230. The wire was not authorized under the latter statute because of the failure to comply with subsection (1). Nothing in the Supreme Court's opinion suggests that failure to comply with subsections (6) and (7) would also be a basis upon which to exclude the evidence.

ute is unconstitutional. However, in *State v. Salinas*,[8] the court upheld the constitutionality of the statute, and Moore did not raise a constitutional argument in her brief.[9] We hold that taped recordings pursuant to RCW 9.73.230 are admissible upon compliance with subsection (1) and do not require proof of compliance with subsections (6) and (7).

SERIOUSNESS LEVEL 8

The seriousness level of possession of cocaine with intent to deliver was raised from 6 to 8 by Laws of 1989, ch. 271, the omnibus alcohol and controlled substances act (hereinafter chapter 271). Moore contends that chapter 271 violated the single subject requirement of the Washington Constitution,[10] that chapter 271 was superseded or repealed by subsequent legislation, and that the appropriate seriousness level is 6.

■ ■ *State v. Jenkins*,[11] in which arguments identical to those raised by Moore were rejected, is dispositive.[12] The court correctly used a seriousness level of 8 in calculating Moore's sentence.

Affirmed.

COLEMAN and AGID, JJ., concur.

Review denied at 123 Wn.2d 1008 (1994).

---

[8]119 Wn.2d 192, 197-99, 829 P.2d 1068 (1992). The defendant in this case is not the same defendant as that in *State v. Salinas, supra* (see footnote 7).

[9]Reference was made at oral argument to the contention that compliance with subsections (6) and (7) is necessary to the constitutionality of the statute. Because the argument was neither raised nor developed in Moore's brief, we decline to address it.

[10]"No bill shall embrace more than one subject, and that shall be expressed in the title." Const. art. 2, § 19.

[11]68 Wn. App. 897, 847 P.2d 488 (1993).

[12]The defendant in *Jenkins* was charged and convicted of delivery of a controlled substance whereas Moore was charged and convicted of possession with intent to deliver. However, both Moore and the defendant in *Jenkins* were charged under RCW 69.50.401(a), and the factual distinction between the two cases is of no significance here and does not preclude application of *Jenkins* to dispose of Moore's arguments.